UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ilya Bykov,

           Plaintiff,

    v.                                                                                  **MEMORANDUM OPINION AND ORDER**

Radisson Hotels International,                                   Civ. No. 05-1280 ADM/JSM
Inc., Carlson Companies, Inc.,
and Carlson Hotels Worldwide,
Inc.,

           Defendants.

_____

Paul D. Cullen, Sr., Esq. and Susan Van Bell, Esq., The Cullen Law Firm, PLLC, Washington, DC, argued on behalf of Plaintiff.

James A. O'Neal, Esq. and Amy R. Freestone, Esq., Faegre & Benson LLP, Minneapolis, MN, argued on behalf of Defendants.

_____

## I. INTRODUCTION

On February 9, 2006, oral argument before the undersigned United States District Judge was heard on Plaintiff Ilya Bykov's ("Plaintiff" or "Bykov") Motion for Class Certification [Docket No. 12] and Defendants Radisson Hotels International, Inc. ("RHI"), Carlson Companies, Inc. ("CCI"), and Carlson Hotels Worldwide, Inc.'s ("CHW") (collectively "Defendants") Motion for Summary Judgment [Docket No. 19]. In his Amended Complaint [Docket No. 10], Plaintiff asserts claims for violations of the Minnesota Deceptive Trade Practices Act ("MDTPA"), the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), the Minnesota False Statement in Advertisement Act ("MFSAA"), and unjust enrichment. For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Class Certification is denied as moot.

## II. BACKGROUND[1]

### A.   Plaintiff Bykov's Personal History

Plaintiff Bykov was born in Moscow, Russia.  Bykov Dep. (Ex. to Defs.' Summ. J. Mem. of Law [Docket No. 26] 1) at 4.  He moved permanently to the United States in 1979 and New York has been his only American residence.  Id. at 6, 12.  He became an American citizen in 1985.  Id. at 28.  He obtained a bachelor's degree in accounting and international economics from New York University in 1986 and worked for various accounting firms as an accountant.  Id. at 15-19.  Bykov started his own accounting firm around 1992 and later named it Protax Services, Inc. ("Protax").  Id. at 19.  Protax is a New York corporation, and Bykov is the sole shareholder and president.  Id. at 22.  Protax provides general accounting services to both individuals and businesses.  Id. at 23.  Approximately one-third of Bykov's clients are Russian nationals doing business in the United States, and Bykov's remaining clients are American citizens doing business in the United States.  Id. at 25-26.  Prior to his deposition in this matter, Bykov had never been to Minnesota, and Bykov has no business connections to Minnesota.  Id. at 27-28.

### B.   Bykov's Stay at the Slavyanskaya

Bykov travels to Russia approximately four times each year, primarily for business.  Id. at 33.  Sometimes Bykov's clients pay for his business expenses, and sometimes Protax pays.  Id.  In February 2005, Bykov traveled to Moscow, Russia for business.  Id. at 34.  For the majority of Bykov's trip, he stayed with a friend, but on February 26, 2005, Bykov stayed at the Radisson

---

[1] On summary judgment, the facts are construed in the light most favorable to the Plaintiff, the nonmoving party.

SAS Slavyanskaya Hotel & Business Center LLC ("Slavyanskaya"). Id. at 35-36, 40. Bykov's employee, Tatiana Gubanova ("Gubanova"), made his reservation at the Slavyanskaya. Id. at 40; Gubanova Dep. (Ex. to Defs.' Reply Summ. J. Mem. of Law [Docket No. 39] 1) at 48-49. Bykov asked Gubanova to get him "the best deal and good hotel in central Moscow." Bykov Dep. at 43. Bykov also wanted a hotel close to his friend's home. Id. at 44; Gubanova Dep. at 49. Using Bykov's criteria, Gubanova made computer printouts for Bykov of several different hotels, each generated from the particular hotel's website, containing information regarding address and rate. Gubanova Dep. at 50-51. The Radisson printout contained the rate of 258.42 USD [U.S. dollars]. Bykov Dep. at 48, 50; Pl.'s Ex. [Docket No. 34] C. The printout also contained a currency calculator, for guests to convert the room rate to another currency.[2] Bykov Dep. at 51; Pl.'s Ex. C. After Bykov selected the Slavyanskaya, Gubanova made the reservation for him.[3] Id. at 48-49.

During his stay at the Slavyanskaya, Bykov does not remember any signs on the front desk informing him of the internal hotel conversion rate. Bykov Dep. at 65. Bykov did not have any conversations with the Slavyanskaya staff about his room rate while he was staying at the hotel. Id. at 67. Upon check out, Bykov received a bill from the Slavyanskaya for a total

---

[2] Bykov avers that he never used the currency calculator, and he did not read the entire computer printout, he just looked at the rate amount. Bykov Dep. at 49, 51. Bykov also avers that prior to his stay at the Slavyanskaya, he never looked at the Radisson website, and never had any telephone conversations with the Slavyanskaya or Radisson. Id. at 47-48. Gubanova does not remember if she used the currency calculator or looked at any of the rate information on the Radisson website, but that even if she had seen it, she would not have paid attention to it. She also avers that she never looked at the Radisson website prior to this instance. Gubanova Dep. at 54, 57-59.

[3] It is unclear from the record whether Gubanova made the reservation on the internet or over the telephone. Gubanova Dep. at 52.

amount of 258.42 CU.[4]  Id. at 69; Ex. to Defs.' Summ. J. Mem. of Law 2.  The bill also included the internal exchange rate of 32, and a total charge in rubles of 8269.44.  Bykov Dep. at 70; Ex. to Defs.' Summ. J. Mem. of Law 2.  Bykov's credit card was charged 8269.44 rubles.[5]  Bykov Dep. at 74; Ex. to Defs.' Summ. J. Mem. of Law 3.  At the time that Bykov received his bill, he believed he was being charged the same amount that was on the original computer printout he had been provided.  Bykov Dep. at 72.  When Bykov received his American Express statement, it reflected a charge for his stay at the Slavyanskaya of 8269.44 rubles, converted to 304.32 dollars.  Id. at 77; Ex. to Defs.' Summ. J. Mem. of Law 3.  Bykov then realized he had been charged $45.90 more than he had expected.  Bykov Dep. at 83.

**C.** **Slavyanskaya Ownership and Management**

Defendant CCI is the worldwide parent of the numerous corporate entities in the Carlson family of companies.  Mogck Aff. [Docket No. 24] at 1.  Defendant CHW is the parent entity for Carlson's hotel businesses, including RHI.  Id.  Defendant RHI is the franchising entity that contracts with various franchisees for their use of the Radisson brand.  Id.  The Defendants aver that neither CCI, RHI, nor CHW ever had any direct ownership or control over the Slavyanskaya.  Id. at 2.  RHI affiliates previously held as much as a 50% interest in the joint venture that was established to own and operate the Slavyanskaya, but in 2004, the affiliates'

---

[4] CU stands for currency units.  Allegedly, it is a wide spread practice for Russian businesses to advertise the prices of their goods and services in foreign currency equivalents or so-called currency units, which are then converted into Russian rubles via a special internal rate or the Russian Federation Central Bank rate.  Komolov Aff. [Docket No. 25] at 3.

[5] At his deposition, Bykov averred that Protax paid the bill for his stay at the Slavyanskaya.  Bykov Dep. at 53.  However, later discovery revealed that the bill was actually charged to the credit card of NEE Consulting Ltd., another business that Bykov owns.  Gubanova Dep. at 29; Ex. to Defs.' Reply Summ. J. Mem. of Law 2.

interest was sold to a Russian corporation, causing the Slavyanskaya to be wholly owned by Russian entities. Id. at 2-3. Similarly, a RHI affiliate previously managed the Slavyanskaya, but all management duties were assumed by Rezidor SAS Hospitality A/S, a Danish limited liability company, in 2001. Id. at 3; Mem. in support of Defs.' Mot. for Summ. J. [Docket No. 21] at 23.

**D.**     **Slavyanskaya's Billing Practice**

The current General Manager and the former Assistant Manager of the Slavyanskaya aver the Slavyanskaya's billing practice is to quote room rates in U.S. dollars, which are designated by the hotel as prearranged monetary units called CU. Rathgen Aff. [Docket No. 23] at 1; Rana Aff. [Docket No. 22] at 2. At checkout, the quoted CU rate is multiplied by an internal hotel exchange rate to convert the room charge into Russian rubles. Rathgen Aff. at 1; Rana Aff. at 2. The guests ultimately pay their bill in rubles. Rathgen Aff. at 1; Rana Aff. at 2. The guests receive a bill that shows the CU rate, the internal exchange rate applied, and the final charge in Russian rubles. Rathgen Aff. at 2; Rana Aff. at 2. The managers allege a sign exhibiting the internal hotel exchange rate is posted on the front desk of the hotel, and that the Slavyanskaya staff are instructed to inform guests of the payment policy when they arrive. Rathgen Aff. at 2; Rana Aff. at 2. Further, guests who call the Slavyanskaya directly to make reservations during business hours reach the Slavyanskaya's reservation agents who are instructed to inform guests that they will ultimately pay in rubles at the hotel's internal exchange rate, and a confirmation letter containing the payment policy is sent to guests after their reservations are made. Rathgen Aff. at 2; Rana Aff. at 3.

**E.**     **The Radisson Reservation System**

CHW controls the Radisson website and operates the Worldwide Reservation Center. Mogck Aff. at 4. CHW's Executive Vice President of Sales and Distribution ("EVP") has responsibility for the Worldwide Reservation Center, based primarily in Omaha, Nebraska, which includes the reservation database system that collects and retains information about reservations. Stage Aff. [Docket No. 29] at 1-2. Reservations are typically made in one of four different ways: through the Radisson website, a 1-800 number, travel agents or other third party providers, or the hotel directly. Id. at 2-4. Information on the website about any particular hotel is supplied directly from the particular hotel to CHW, and CHW then displays the information on the Radisson website. Id. at 2. The same hotel information available on the Radisson website is provided on the systems accessed by 1-800 reservationists and travel agents, and reservationists are directed to pass this information on to guests making reservations through these means. Id.

Prior to August 2004, information provided by the Slavyanskaya to the Worldwide Reservation Center about its billing and payment requirements did not include any currency instructions other than room rates were quoted in U.S. dollars. Id. at 5. In August 2004, the Slavyanskaya amended its instructions to the Worldwide Reservation Center regarding payment methods at the hotel, specifying that final bills at the hotel would be converted from U.S. dollars to Russian rubles at the hotel's internal exchange rate. The practice stated on the website, and to the systems accessed by the 1-800 reservationists and the travel agents, was: "All charges are payable in local currency subject to applicable exchange rate . . . . The room rate is quoted in USD and shall be converted to RUR [Russian rubles] at the hotel internal exchange rate." Id. at 5-6. This disclosure existed on the various systems until November 2005, at which time it was amended slightly by adding additional information about the internal hotel exchange rate:

"currently 32 RUR to 1 USD. This internal exchange rate may be different from the exchange rate quoted by the Central Bank of the Russian Federation." Id. at 6.

Guest information from Slavyanskaya bookings made through the internet, 1-800 numbers, or travel agents is saved in the reservation database system, but guest information from reservations made directly with the Slavyanskaya has never been retained in the CHW reservation database system. Id. at 4. A review of the reservation database system related to the Slavyanskaya revealed no reservation made by or on behalf of Ilya Bykov for the Slavyanskaya at any time. Id. at 8.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Plaintiff's Claims Under the MPCFA and MFSAA**

Defendants argue that both Plaintiff's MPCFA and MFSAA claims fail because Plaintiff is unable to establish any of the required elements to bring a private action set forth by the Private Attorney General Act ("Private AG Act"), Minn. Stat. § 8.31, subd. 3a. Defendants argue that Bykov personally sustained no injury because either NEE or Protax paid for the hotel room and sustained the loss of the $45.90 in controversy. Additionally, simply receiving a misrepresentation is not sufficient injury. Defendants also argue that Plaintiff can not establish the reliance leading to causation because Bykov himself never viewed the Radisson website or any other material concerning the Slavyanskaya's pricing methods prior to his stay at the Slavyanskaya. In addition, Gubanova merely printed hotel website pages with price and address information for Bykov; she did not review the hotel information and representations on the website. Further, Bykov's lawsuit does not satisfy the public benefit requirement because the challenged conduct has ceased—CHW has since added further information to the Radisson website, listing the exact internal hotel exchange rate used at the Slavyanskaya and explaining how it may be different from the Russian Federation Central Bank rate.

Plaintiff responds that he has satisfied all three elements of the Private AG Act. Plaintiff first contends that "injury" includes indirect injury, and that he was indirectly injured because the company of which he is sole shareholder paid the bill. Plaintiff next argues that causation is established because he did rely on the quoted room rate, provided to him by his employee Gubanova, from the Radisson website, but even if he had not, reliance is not an element that he is required to prove. Finally, Plaintiff argues that his lawsuit does benefit the public because it will stop the worldwide dissemination of Defendants' misrepresentations, and the case is not mooted by CHW's recent modifications to its website because without an injunction, CHW is

free to change the website again.

The MFSAA prohibits a corporation from disseminating any advertisement that "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading" in connection with the sale of merchandise or services. Minn. Stat. § 325F.67. The MPCFA prohibits a corporation from using "any fraud, false promise, misrepresentation, misleading statement or deceptive practice . . . in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1. Both the MFSAA and MPCFA are typically enforced by the state attorney general. Minn. Stat. §§ 325F.67; 325F.70, subd. 1. However, the Minnesota Private AG Act confers a private right of action on "any person injured by a violation of" the MFSAA or the MPCFA. Minn. Stat. § 8.31, subds. 1, 3a. The Minnesota Supreme Court has held that to act as a private attorney general, a plaintiff must establish 1) injury, 2) causation, and 3) public benefit. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 11, 13 (Minn. 2001).

In Group Health, the Minnesota Supreme Court held that while it is "not necessary to plead individual consumer reliance on the defendant's wrongful conduct to state a claim for damages," in some cases, "it will be necessary to prove reliance on [the defendant's] statements or conduct to satisfy the causation requirement." 621 N.W.2d at 13. The court further stated "where, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." Id. In this case, the crux of the dispute between Plaintiff and Defendants is what exactly constitute the alleged misrepresentations.

9

Plaintiff contends that the price itself is the misleading statement while Defendants contend that the price plus the further representations on the website, including "[t]he room rate is quoted in USD and shall be converted to RUR at the hotel internal exchange rate," is the representation at issue.

In this case, summary judgment is granted to Defendants on the MFSAA and MPCFA claims because Plaintiff has failed to satisfy the causation element. Whether termed "reliance" or "causation," Plaintiff has not established any causal nexus between Defendants alleged misrepresentations and his alleged injury. Plaintiff never examined the Slavyanskaya's website or any other information about the Slavyanskaya's pricing practices before or during his stay at the Slavyanskaya. Gubanova does not remember reviewing any information regarding the Slavyanskaya's pricing policies, but has stated that she would not have paid attention to it if she had seen it. Taken out of context, the quoted rate "258.42 USD" may have been misleading, but the rate was shown on an initial website screen which had further information explaining: "[t]he room rate is quoted in USD and shall be converted to RUR at the hotel internal exchange rate." Whether the additional language is sufficient clarification is irrelevant because neither Bykov nor Gubanova relied on it when making their decisions to book a reservation at the Slavyanskaya. CHW displayed the Slavyanskaya's rates on its website according to the Slavyanskaya's lawful pricing practice, along with additional disclaimer language. Gubanova's failure to pass on the additional disclaimer language to Bykov can not be attributed to the Defendants.[6]

---

[6] Because summary judgment is granted to Defendants on Plaintiff's MFSAA and MPCFA claims due to Plaintiff's failure to establish causation, it is unnecessary to address Defendants' arguments regarding injury or public benefit, or that the MFSAA claim fails

C.   **Plaintiff's Claim under the MDTPA**

Defendants argue that Plaintiff's MDTPA claim fails as a matter of law because Plaintiff did not receive any representations from Defendants prior to his stay at the Slavyanskaya. Also, the statements made on the website with regard to the Slavyanskaya's pricing practices were true, in accord with lawful pricing practices in Russia, and are consistent with how Plaintiff was charged for his stay at the Slavyanskaya. Plaintiff responds that he has stated a cause of action under the MDTPA because Defendants intentionally misled consumers by quoting an amount in U.S. dollars on their website less than the actual amount ultimately paid in U.S. dollars, and by failing to inform guests that the final amount charged in Russian rubles would be unrelated to the amount quoted or the official exchange rate.

The MDTPA lists various ways in which a person engages in a deceptive trade practice in the course of business, including "advertis[ing] goods or services with intent not to sell them as advertised" and "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44(9), (13). Plaintiff's MDTPA claim fails because the representations on the website, and allegedly passed on to customers through 1-800 reservationists, travel agents, or the hotel directly, were accurate statements of how the Slavyanskaya charges a customer for his hotel stay. Further, Plaintiff was provided only a portion of the representation—Plaintiff received from Gubanova the quoted rate of 258.42 USD, but did not receive the additional representation that "[t]he room rate is quoted in USD and shall be converted to RUR at the hotel internal exchange rate." Again, whether the additional

---

because the alleged misrepresentations were not made in Minnesota. Similarly, it is unnecessary to address Defendants' arguments regarding *forum non conveniens*.

representation is sufficient to prevent a likelihood of confusion or misunderstanding is irrelevant as Plaintiff never received it.  There is also no evidence that Gubanova received it because although she looked at the website, she has stated that she does not remember reading any information about the Slavyanskaya's pricing policies, but that even if she had seen the additional information, she would not have paid attention to it.  Plaintiff can not selectively extract a single piece of information from Defendants' website out of context and rely on it, excluding the other information displayed.  Gubanova's failure to review the Slavyanskaya's pricing practices or to pass the information on to Bykov can not be imputed to the Defendants.  Therefore, summary judgment is appropriate with respect to Plaintiff's MDTPA claim.

**D.     Unjust Enrichment**

Defendants argue that Plaintiff does not have standing to assert a claim for unjust enrichment because Plaintiff's company paid for his hotel stay at the Slavyanskaya, and therefore Plaintiff sustained no direct injury.  Defendants additionally argue that Plaintiff can not prove unjust enrichment because his claim is governed by an express contract between the parties.  Plaintiff responds that he was indirectly injured because he is the sole shareholder of the company that paid the bill, and his claim is not based on breach of contract because Defendants' misrepresentations are available to any guest seeking information about rates at the Slavyanskaya hotel.

Plaintiff's claim for unjust enrichment must fail.  "The theory of unjust enrichment . . . has been invoked in support of claims based upon failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another."  Cady v. Bush, 166 N.W.2d 358, 361-62 (Minn. 1969).  In this case, Plaintiff has not

established any of these premises.  Additionally, prudential limits of standing considerations dictate that Plaintiff's claims must be dismissed because Plaintiff's company, as the entity that paid the hotel bill, suffered the injury, not Plaintiff.  See Pothoff v. Morin, 245 F.3d 710, 716-17 (8th Cir. 2001) (holding that actions to redress injuries to the corporation cannot be maintained by a stockholder in his own name even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock and even if the plaintiff is the sole shareholder of the corporation").[7]

The Court heard oral argument on Plaintiff's Motion for Class Certification on the same day as Defendants' Motion for Summary Judgment.  Because Defendants' Motion for Summary Judgment is granted, Plaintiff's Motion for Class Certification is denied as moot.[8]

---

[7] The Court notes that the injury-in-fact analysis also applies to Plaintiff's other Minnesota statutory claims.  Because Bykov's company suffered the injury claimed rather than Bykov himself, Bykov's statutory claims must fail.

[8] On February 20, 2006, after the instant motions had been taken under advisement, Plaintiff filed a Motion for Leave to File Second Amended Complaint [Docket No. 43], pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  The time to file an amended pleading as a matter of right has long since passed, and Defendants have not given Plaintiff their consent, and so Plaintiff seeks leave of court.  This Order renders Plaintiff's Motion to amend his Complaint moot.  Even if the Second Amended Complaint were filed, the claims would still be unsuccessful for the reasons stated in this Order.  The only proposed change in the Second Amended Complaint is the addition of the corporate entity plaintiffs.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Radisson Hotels International, Inc., Carlson Companies, Inc., and Carlson Hotels Worldwide, Inc.'s Motion for Summary Judgment [Docket No. 19] is **GRANTED**; and

2. Plaintiff Ilya Bykov's Motion for Class Certification [Docket No. 12] is **DENIED** as moot .

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 22, 2006.